SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal. Bar No. 168646
JAY T. RAMSEY, Cal. Bar No. 273160
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:  310.228.3701
E mail       ccardon@sheppardmullin.com
             jramsey@sheppardmullin.com

*Attorneys for Defendant*
ST. JOHN KNITS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRINA OSTROVSKAYA, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ST. JOHN KNITS, INC., and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 2:21-cv-03243 <br><br> **NOTICE OF REMOVAL** |

-1-

SMRH:4817-9128-8037.1

PLEASE TAKE NOTICE that St. John Knits, Inc. ("SJK"), the defendant in the above-captioned action, which was commenced in the Superior Court of California for Ventura County, captioned *Irina Ostrovskaya v. St. John Knits, Inc.*, Case No. 56-2021-00551943-CU-BT-VTA (the "State Court Action"), hereby invokes the removal jurisdiction of the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, 1453 and Federal Rule of Civil Procedure, Rule 81(c), asserting original federal jurisdiction under 28 U.S.C. §§ 1332(d)(2) and 1453(b).  The following is a short, plain statement of the grounds for removal.  *See* 28 U.S.C. § 1446(a).

## I.   <u>DESCRIPTION OF THE ACTION</u>

Plaintiff Irina Ostrovskaya ("Plaintiff") filed a Complaint in the State Court Action on March 15, 2021.  The claims against SJK arise out of its use of various pricing statements in a transaction with Plaintiff at its outlet store in Camarillo, California.  Plaintiff purports to act on behalf of a putative class of "[a]ll persons who, while in the State of California, during the four (4) year period preceding the filing of the original Complaint through the date of final judgment in this action (the 'Class Period'), purchased one or more St. John Outlet Products at a purported discount off of the stated Reference Prices on the price tags at any St. John Outlet Stores in the State of California, and who have not received a refund or credit for their purchases."  (Complaint, ¶ 53.)  The Complaint asserts the following causes of action: (a) violation of the unfair prong of the Unfair Competition Law, California Business and Professions Code § 17200 *et seq.*; (b) violation of the "fraudulent" prong of the Unfair Competition Law, California Business and Professions Code § 17200 *et seq.*; (c) violation of the "unlawful" prong of the Unfair Competition Law, California Business and Professions Code § 17200 *et seq.*; (d) violation of the False Advertising Law, California Business and Professions Code § 17500 *et seq.*; and (e) violation of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

The nature of the action is more fully stated in the Complaint, a true and correct copy of which is attached hereto as Exhibit A.

## II.    BASIS FOR REMOVAL

The Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). CAFA provides that federal courts have original jurisdiction and removal jurisdiction in class actions where (a) minimal diversity of citizenship exists; (b) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (c) the primary defendants are not states, state officials or government entities against whom the federal court may be foreclosed from ordering relief; and (d) there are more than 100 people in the putative class. 28 U.S.C. § 1332(d)(2); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007). As set forth below, this action is removable under CAFA.

### A.    Diversity Of Citizenship Exists

Diversity of citizenship is established under CAFA for "a class action in which (A) any member of a class of plaintiffs is a citizen of a State different from any defendant … ." 28 U.S.C. § 1332(d)(2). Thus, only minimal diversity is required, and is satisfied where at least one member of the putative class is a citizen of a state different from the sole named defendant.

Here, SJK is a citizen of California – it is incorporated in California and its principal place of business is located at 17522 Armstrong Avenue, Irvine, California 92614. (Complaint, ¶ 30.) The named-plaintiff (Irina Ostrovskaya) alleges that she is also a citizen of California, and her causes of action arise out of purchases she made in California, but she purports to represent a class of any individuals – whether they reside in California or not – that made similar purchases. SJK's customers include individuals from states and countries outside of California. (Declaration of Lisa Simonetti ("Simonetti Decl.") ¶ 2.) Minimal diversity is thus

1  satisfied here because SJK is a citizen of California and at least one member of the

2  class is a citizen of another state.[1]

3      **B.      The Amount In Controversy Exceeds $5,000,000**

4          Under CAFA, "the claims of the individual class members shall be

5  aggregated to determine whether the matter in controversy exceeds the sum or value

6  of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  Where the

7  plaintiff has not demanded a sum certain in the complaint, the defendant must only

8  prove the amount in controversy by a preponderance of the evidence for purposes of

9  determining CAFA removal jurisdiction.  *Lowdermilk v. United States Bank Nat'l*

10  *Assoc.*, 479 F.3d 994, 998 (9th Cir. 2007); *cf. Gugliemino v. McKee Foods Corp.*,

11  506 F.3d 696, 700 (9th Cir. 2007) (the party seeking removal must "prove with legal

12  certainty" the amount in controversy only when the state court complaint

13  affirmatively alleges an amount in controversy *less than* the jurisdictional

14  threshold).

15          The amount in controversy allegation in a notice of removal should be

16  accepted as true when not contested by a plaintiff or questioned by the court.  *Dart*

17  *Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014).  If the court is

18  uncertain about whether all matters in controversy meet the $5,000,000

19  jurisdictional threshold under CAFA, "the court should err in favor of exercising

20  jurisdiction over the case."  *Kearns v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS

21  41614, *19 (C.D. Cal. Nov. 18, 2005) (citing Senate Judiciary Committee Report, S.

22  REP. No. 109-14)  While SJK denies that Plaintiff or the purported class members

23  are entitled to any relief, in determining the amount in controversy the Court must

24

25  [1]      The existence of Doe defendants 1 through 10, named in Plaintiff's
   Complaint, does not deprive this Court of jurisdiction because the citizenship of
26  fictitious and unknown defendants are disregarded for purposes of establishing
27  removal jurisdiction under 28 U.S.C. § 1332; *Fristoe v. Reynolds Metals Co.*, 615
   F.2d 1209, 1213 (9th Cir. 1980) ("unknown defendants sued as 'Does' need not be
28  joined in a removal petition").

-4-

1   assume that allegations in the Complaint are true and that Plaintiff will ultimately

2   prevail. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d

3   993, 1001 (C.D. Cal. 2002); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F.

4   Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) ("the ultimate inquiry is what amount is

5   put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually*

6   owe").

7          Plaintiff does not demand a sum certain in the Complaint, but the minimum

8   amount in controversy is nonetheless satisfied. Plaintiff asserts that SJK

9   "continuously advertised false price discounts for merchandise made predominately,

10  if not exclusively, for sale throughout its St. John Outlet Stores in California."

11  (Complaint, ¶ 5.) The Complaint refers to this product as "St. John Outlet

12  Products;" it is also known colloquially as "Made for Outlet" product or "MFO"

13  product. (Simonetti Decl. ¶ 3.) With respect to the putative class's purchases of

14  MFO product, the Complaint seeks monetary relief, including in the amount of the

15  full purchase price of the MFO product. (*See, e.g.*, Complaint ¶¶ 72, 80, 91, 100.)

16  Based on sales in the four years prior to the filing of the Complaint in California

17  alone, the amount in controversy exceeds $5 million. (Simonetti Decl., ¶ 3 .)

18          Plaintiff additionally requests attorneys' fees. (Complaint, Prayer for Relief,

19  ¶ 5.) Although SJK denies that Plaintiff is entitled to such fees, the Court should

20  take attorneys' fees into account in ascertaining the amount in controversy even

21  where an award is discretionary. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150,

22  1155-56 (9th Cir. 1998). Similarly, the cost of complying with injunctive relief may

23  be considered in determining the amount in controversy. *BEM I, LLC v.*

24  *Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002). Therefore, Plaintiff's

25  broadly alleged claims for monetary, injunctive, and declaratory relief place more

26  than $5,000,000 at issue in this action.

27

28

### C.   **Putative Class Exceeds 100 Class Members**

Plaintiff alleges in the Complaint that, while she does not know the exact number of potential class members, "the Class consists of thousands of members." (Complaint, ¶ 55.)  Because there is no dispute that the putative class – as currently defined by Plaintiff on the face of the Complaint – includes more than 100 people, the class size requirement of CAFA is met.

### D.   **SJK Is a Private Entity**

SJK is a private corporation; it is not a state, state official, or governmental entity.  *See* 28 U.S.C. § 1332(d)(5).  Accordingly, SJK's legal status does not defeat removal jurisdiction.

## III.   **THE NOTICE OF REMOVAL IS PROCEDURALLY PROPER**

A case may be removed within thirty days of formal service on the removing defendant.  28 U.S.C. § 1446(b); *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 347-48 (1999) (30-day time period in which to remove triggered by date of formal service, not date when "courtesy copy" was faxed to defendant).  It is unclear if service has been effected, so, out of an abundance of caution, SJK is removing this action within thirty days of its filing.

Pursuant to 28 U.S.C. § 1446(d), SJK is giving notice to the Ventura County Superior Court and to the Plaintiff of this removal.  In compliance with 28 U.S.C. § 1446(a), a true and correct copy of the Complaint is attached as Exhibit A. There were no other pleadings, processes, or orders served or filed in the action.

## IV.   **CONCLUSION**

For all the reasons set forth above, SJK requests that the State Court Action pending before the Superior Court of the State of California for Ventura County be removed to the United States District Court for the Central District of California as if originally filed herein.

1  Dated:  April 15, 2021          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

2

3                                  By

4                                       _____
                                            /s/ Jay T. Ramsey

5                                          P. CRAIG CARDON
                                           JAY T. RAMSEY

6
                                        *Attorneys for Defendant*
7                                       ST. JOHN KNITS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-7-

# Exhibit A

RECEIVED FOR SCANNING
VENTURA SUPERIOR COURT

MAR 15 2021

1  LAW OFFICES OF ZEV B. ZYSMAN
   A Professional Corporation
2  Zev B. Zysman, State Bar No. 176805
   zev@zysmanlawca.com
3  15760 Ventura Boulevard, 16th Floor
   Encino, CA 91436
4  Telephone: (818) 783-8836
   Facsimile: (818) 783-9985
5
   Attorneys for Plaintiff and
6  the Proposed Class

7

8

                 SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                     FOR THE COUNTY OF VENTURA
10

11

12  IRINA OSTROVSKAYA, on behalf of herself      CASE NO.
    and all others similarly situated,
13                                               **CLASS ACTION COMPLAINT**
                   Plaintiffs
14
15  vs.                                          1. Violation of the "Unfair" Prong of the UCL
                                                 2. Violation of the "Fraudulent" Prong of the
16  ST. JOHN KNITS, INC.,  and DOES 1 through    UCL
    100, inclusive,                              3. Violation of the "Unlawful" Prong of the
17                                               UCL
                   Defendants.                   4. Violation of the California False Advertising
18                                               Law, California Business & Professions Code
                                                 Sections 17500, *et seq.*
19                                               5. Violations of California Consumer
                                                 Legal Remedies Act
20
21                                               **DEMAND FOR JURY TRIAL**
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT



1        Plaintiff Irina Ostrovskaya ("Plaintiff") brings this action against Defendant St. John Knits,

2  Inc. ("Defendant" or "St. John") on behalf of herself, and all others similarly situated, upon

3  information and belief, except as to her own actions, the investigation of her counsel, and the facts

4  that are a matter of public record, as follows:

5

6                                **INTRODUCTION**

7       1.     This class action arises out of Defendant's unlawful, unfair, and fraudulent business

8  practice commonly referred to as "false reference pricing." "False reference pricing" is the act of

9  misrepresenting the former, original or regular price of some good that is purportedly offered at a

10  "sale price," a business practice that Defendant engages in to increase sales. As alleged herein,

11  during at least the past four years, Defendant has misled consumers by advertising the false former,

12  original or regular prices which were fabricated, and corresponding phantom "savings" on upscale

13  apparel for women sold in its St. John Outlet Stores located in California.

14       2.     California law prohibits the discounting of retail merchandise from its original price

15  for more than ninety (90) days. *See* California Business & Professions Code §17501. Federal

16  regulations also mandate that a retailer offer only genuine discounts from regular retail prices; not

17  false discounts from inflated original prices. *See* 16 C.F.R. §233.1.

18       3.     Some retailers, such as St. John, employ false reference pricing because it misleads

19  consumers into believing that they are "getting a good deal," thereby increasing sales. The United

20  States Court of Appeals for the Ninth Circuit succinctly explained: "Most consumers have, at some

21  point, purchased merchandise that was marketed as being 'on sale' because the proffered discount

22  seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain,

23  therefore have an incentive to lie to their customers by falsely claiming that their products have

24  previously sold at a far higher 'original' price in order to induce customers to purchase merchandise

25  at a purportedly marked-down 'sale' price. Because such practices are misleading – and effective

26  – the California Legislature has prohibited them." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101

27  (9th Cir. 2013).

28

2

CLASS ACTION COMPLAINT

1    4.    The intentional use of false and fraudulent reference pricing tactics is increasingly

2 deceiving consumers in the market.  To illustrate, on January 30, 2014, four members of Congress

3 demanded a Federal Trade Commission ("FTC") investigation of misleading marketing practices

4 by outlet stores across the United States.  The four Members of Congress described a pricing scheme

5 similar to the one implemented at St. John Outlet Stores and stated:  "[h]owever, we are concerned

6 that outlet store consumers are being misled into believing they are purchasing products originally

7 intended for sale at the regular retail store.  Many outlets may also be engaged in deceptive reference

8 pricing. It is a common practice at outlet stores to advertise a retail price alongside the outlet store

9 price – even on made-for-outlet merchandise that does not sell at regular retail locations.  Since the

10 item was never sold in the regular retail store or at the retail price, the retail price is impossible to

11 substantiate.  We believe this practice may be a violation of the FTC's Guides Against Deceptive

12 Pricing (16 CFR 233)." *See* www.whitehouse.senate.gov/news/release/sens-and-rep-to-ftc-outlet-

13 stores-may-be-misleading-consumers.

14    5.    During the Class Period (defined below), Defendant continuously advertised false

15 price discounts for merchandise made predominately, if not exclusively, for sale throughout its St.

16 John Outlet Stores in California (hereinafter referred to as "St. John Outlet Products").

17    6.    Specifically, Defendant intentionally represented – on the price tags of St. John

18 Outlet Products – "Reference Prices" that were overstated and did not represent a bona fide price at

19 which St. John Outlet Products were previously sold.  Nor was the advertised Reference Price a

20 prevailing market retail price within three months immediately preceding the publication of the

21 advertised former prices, as required by California law.   As used throughout the Complaint,

22 Reference Price(s) shall mean the ticketed price(s) listed on the St. John Outlet Product's price tag.

23 As addressed in detail below, Plaintiff and reasonable consumers typically understand the Reference

24 Price to be the former, original, or regular price of the item on which it appears.

25    7.    Defendant conveys its deceptive pricing scheme through in store signage offering

26 steep discounts from the Reference Prices listed on the products' price tags in the St. John Outlet

27 Stores.  The Reference Prices listed and advertised on Defendant's price tags are fake reference

28

CLASS ACTION COMPLAINT

prices; utilized only to perpetuate Defendant's fake-discount scheme. The pricing scheme is prominently displayed on virtually all St. John Outlet Products throughout the store. Defendant's deception is two-fold. The first aspect of Defendant's deceptive advertising is in how the price tags advertise the St. John Outlet Products at the Outlet Stores. The St. John Outlet branded products sold at the Outlet Stores contain a price tag which prominently and conspicuously represents to the consumer two purported prices: a higher "Val. Price" and a seemingly lower "Our Price." The original "Val. Price" price is always the highest price conveyed to the consumer at the St. John Outlet Stores, and the current price is always less than the original price. The original "Val. Price" conveys to the consumer that the merchandise sold in the St. John Outlet Store was, at one time in the past, sold at the "higher price," while the current "Our Price" conveys to the consumer that the "lower price" listed is the current, regular price for the merchandise in the St. John Outlet Stores.

8. The higher original "Val. Price" is deceptive to consumers because the St. John Outlet Products were never sold at the original price in the Outlet Stores. Defendant does not give consumers any indication as to when the St. John Outlet Products had the original price, if ever, or how that price was in fact determined. Therefore, the original "Val. Price" on the price tag establishes a false bona fide and/or original price for each St. John Outlet branded product offered for sale in the St. John Outlet Stores. It is a price at which the products were never sold in the Outlet Stores.

9. Moreover, beneath the original "Val. Price" price on the price tags of St. John Outlet Products sold at the Outlet Stores is a second deceiving, false bona fide and/or regular price: the lower current "Our Price." The "current" price is always lower than the "original" higher price. Defendant uses the "current" price description to convey to consumers that the "current" prices are ostensibly lower than the "original" price description. However, the lower "current" price is deceptive to consumers because the products were never sold at the current price in the Outlet Stores. Defendant does not give consumers any indication as to when the St. John Outlet Products had the current price, if ever, or how that price was in fact determined. Therefore, the current "Our Price"

CLASS ACTION COMPLAINT

1    on the price tag also establishes a false bona fide price for each St. John Outlet Product offered for
2    sale in the St. John Outlet Stores.

3         10.    The Outlet Stores are the only stand-alone stores owned by Defendant where
4    primarily the St. John Outlet Products are sold. The comparison of the former value as described
5    by the higher original "Val. Price" on the price tag to the lower current "Our Price" offered by
6    Defendant as represented on the price tag is false, evasive, and misleading. Stated plainly, the entire
7    price tag which is composed of the higher "Val. Price" and the lower "Our Price" is misleading
8    because the St. John Outlet Products were never sold at *either* price in the Outlet Stores. Both prices
9    are fictitious and misleading, and did not constitute the prevailing market retail prices for St. John
10   Outlet Products sold by Defendant in its Outlet Stores.

11        11.    The second aspect of Defendant's deceptive advertising is in how the Defendant
12   *continuously* discounts the St. John Outlet Products below the purported higher original "Val. Price"
13   and the lower current "Our Price" price listed on the original price tag, rendering the prices illusory.
14   There are typically large placard signs on top of or alongside each rack of items, advertising a
15   discounted "__% OFF" for the item in the Outlet Stores. For example, a St. John Outlet Product
16   may have a price tag with a higher original "Val. Price" of $495 and a lower current "Our Price" of
17   $295 and the related signage advertising to "Take an additional 20% Off" of "New Arrivals" which
18   is substantially less than the current "Our Price" listed on the price tag. *See* Exhibits "A" and "B."
19   Another example, is a St. John Outlet Product may have a price tag with a higher original "Val.
20   Price" of $995 and a lower current "Our Price" of $595 reduced to $565 and the related signage
21   advertising "70% OFF" of the "Lowest Ticketed Price" which is substantially less than the current
22   "Our Price" listed on the price tag. *See* Exhibits "C" and "D." However, the "Reference Prices"
23   listed on the price tags have never existed and/or were not the prevailing market retail prices for
24   such St. John Outlet Products within the three months next immediately preceding the publication
25   of the price tags, as required by California law. They are fictional creations intentionally designed
26   to enable Defendant's phantom markdowns. Furthermore, upon check-out, Defendant bolsters the
27   above-referenced scheme by providing California consumers, including Plaintiff, with sales receipts
28

CLASS ACTION COMPLAINT

continuing the misrepresentations regarding false price reductions from the "Reference Prices." For example, the stated "*Line Discount %*" indicating the "percent" discount off the advertised lower current "Our Price" is listed for each item purchased and the corresponding "New Price" for each item on the sales receipts.

12.    St. John knows consumers are bargain-hunters, and knows consumers are lured by the prospect of a bargain at "Outlet" stores. "Outlet" stores are commonly understood by the public to be selling the same merchandise that the manufacturer typically sells at its regular non-outlet retail stores, but at a discount. According to Business Insider, "[t]he common assumption about outlet stores is that you're getting the same goods that are in a regular store without the big price tag." *See* http://www.businessinsider.com/outlet-stores-arent-a-good-deal-2014-5. However, outlet stores typically sell different merchandise than their retail counterparts.

13.    In this case, Defendant offers for sale St. John Outlet Products made predominately, if not *exclusively*, for its St. John Outlet Stores, which means that such items were never sold – or even intended to be sold – at the Reference Prices advertised on the price tags. Most of these St. John Outlet Products were never offered for sale at the company-operated retail Boutique Stores in California. Further exacerbating consumers' perception of deep discounts is the fact that Defendant sells higher quality products at its Boutique Stores. Defendant knows that consumers expect to receive a discount when shopping at its St. John Outlet Stores, and accordingly, preys on consumer expectations by artificially marking up the Reference Prices of its St. John Outlet Products and then offering discounts off of the artificially inflated Reference Prices to induce consumers to purchase its St. John Outlet Products. The truth is that the St. John Outlet Products are not discounted off former, regular, or original prices. Rather, the Reference Prices exist to provide an illusory discount when compared to the actual sales price offered. This tactic is called "reference pricing." The Reference Prices listed on the St. John Outlet Products' price tags were and are the prices chosen by Defendant to enable it to engage in its phantom markdown scheme.

///

///

6

14.     Defendant conveys its deceptive pricing scheme to consumers through promotional materials, in-store advertising displays, print advertisements, and price tags, which are uniform. Defendant's false price advertising scheme has been rampant throughout California as part of a massive, years-long, pervasive campaign and has been consistent across all of Defendant's St. John Outlet Products sold in its St. John Outlet Stores. Indeed, most, if not all St. John Outlet Products sold in the St. John Outlet Stores are subject to the same fraudulent pricing scheme complained of herein.

15.     Upon information and belief, thousands of Defendant's consumers in California, including Plaintiff, were victims of Defendant's deceptive, misleading, and unlawful false pricing scheme.  This deception will continue if Defendant is not enjoined from continuing their pricing scheme.

16.     Defendant knows or should reasonably know that its reference price advertising is false, deceptive, misleading and unlawful under California law.

17.     Defendant fraudulently concealed from, and intentionally failed to disclose to, Plaintiff and other members of the Class, the fact that Reference Prices displayed on the St. John Outlet Products do not reflect a former, regular, or original price.

18.     At all relevant times, Defendant has been under a duty to Plaintiff and the Class to disclose the truth about its Reference Prices and false discounts.

19.     The facts which Defendant misrepresented or failed to disclose are material facts that a reasonable person would have considered material, *i.e.*, facts which would contribute to a reasonable person's decision to purchase Defendant's merchandise. Defendant's false representations of Reference Prices and false representations of purported savings, discounts and bargains are objectively material to the reasonable consumer, including Plaintiff, and therefore reliance upon such representations may be presumed as a matter of law.

20.     Plaintiff reasonably relied upon Defendant's false representations of Reference Prices and discounts when purchasing St. John Outlet Products from a St. John Outlet Store in California. Plaintiff would not have made such purchases, but for Defendant's false representations

7

1   and fraudulent omissions of the Reference Prices of the items she purchased, as compared with the
2   supposedly discounted prices at which the St. John Outlet Store offered the items for sale.  Plaintiff
3   would like to continue shopping at Defendant's Outlet Stores in the future but cannot be certain of
4   the veracity of Defendant's advertised bargains.

5         21.    Plaintiff reasonably believed the truth of the represented prices attached to the price
6   tags, or in advertisements or on signage regarding the St. John Outlet Products purchased at the St.
7   John Outlet Store, which expressly represented that Plaintiff was getting a substantial percentage
8   discount off the Reference Prices. Plaintiff reasonably understood the Reference Price
9   representation to indicate a true former price of the identical item, as sold at a St. John Boutique
10  Store.  Indeed, one cannot truly "save" off anything other than a true former price on the identical
11  product.  Otherwise, one is not "saving," one is simply buying a different product than the one that
12  bears a higher price.

13        22.    Plaintiff and the Class reasonably and justifiably acted and relied on the substantial
14  price differences that Defendant advertised, and made purchases believing that they were receiving
15  a substantial discount on an item of greater value than it actually was.  Plaintiff and the Class
16  reasonably understood the Reference Prices on the price tags to be a valid representation of a true
17  former price on the identical product. Plaintiff and the Class did not understand the Reference Prices
18  to indicate a comparison to a non-identical product.  However, the prices listed on the price tags did
19  not represent a true former price or the prevailing market retail price in the preceding three months
20  for the St. John Outlet Products. Plaintiff, like other Class members, was lured in, relied on, and was
21  damaged by these pricing schemes that Defendant carried out.

22        23.    Defendant intentionally concealed and failed to disclose material facts regarding the
23  truth about its misrepresentations and false former price advertising scheme for the purpose of
24  inducing Plaintiff and Class members to purchase St. John Outlet Products in its St. John Outlet
25  Stores.

26        24.    Through its false and deceptive marketing, advertising and pricing scheme,
27  Defendant has violated, and continues to violate California law prohibiting advertising goods for
28

8

1  sale as discounted from purported former prices which are false, and prohibiting misleading

2  statements about the existence and amount of price reductions.   Specifically, Defendant has

3  violated, and continues to violate, California's Business & Professions Code §§ 17200, *et seq.* (the

4  "UCL"), California's Business & Professions Code §§ 17500, *et seq.* (the "FAL"), and the

5  California Consumers' Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA"),

6  and the Federal Trade Commission Act  ("FTCA"), which prohibits "unfair or deceptive acts or

7  practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements.  15 U.S.C. §

8  52(a).

9        25.    Plaintiff brings this action on behalf of herself and other similarly situated consumers

10  who have purchased one or more St. John Outlet Products at St. John Outlet Stores in California

11  that were deceptively represented as discounted from false former prices in order to halt the

12  dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and

13  misleading perception it has created in the minds of consumers, and to obtain redress for those who

14  have purchased such products.  Plaintiff seeks restitution and other appropriate equitable remedies,

15  including an injunction under the UCL and FAL; and an injunction under the CLRA.

16

17                              **JURISDICTION AND VENUE**

18        26.    This Court has subject matter jurisdiction over the causes of action asserted herein

19  pursuant to California Code of Civil Procedure § 410.10 and Article VI, § 10 of the California

20  Constitution. In the aggregate, the damages caused to the members of the Class as defined below

21  exceed the jurisdictional minimum of this Court, but neither the Plaintiff nor any member of the

22  Class individually has suffered damages of, at least, $75,000.

23        27.    This Court has personal jurisdiction over the Defendant named herein because

24  Defendant does sufficient business in California, has sufficient minimum contacts with California

25  and/or otherwise intentionally avails itself of the markets within California through the ownership

26  and operation of St. John Outlet Stores in California where Defendant employed, and continues to

27  employ, the sale tactics detailed herein to render the exercise of jurisdiction by California courts and

28

9

1  the application of California law to the claims of the Plaintiff permissible under traditional notions
2  of fair play and substantial justice.

3       28.    Venue is proper in this Court since, as detailed below, the acts and transactions giving
4  rise to this action occurred in this County, a substantial number of Defendant's acts occurred in this
5  County, and Defendant received substantial compensation from sales of its products in this County
6  by doing business here. Thus, as to the named Plaintiff and other Class members, certain obligations
7  and liability of the Defendant arose in part in this County.

8
9  **THE PARTIES**

10  A.    <u>Plaintiff</u>

11       29.    Plaintiff Irina Ostrovskaya ("Ostrovskaya") is, and at all times relevant hereto has
12  been a resident of the State of California.  It is alleged that on October 24, 2019, in reliance on
13  Defendant's false and deceptive advertising, marketing and pricing schemes, Plaintiff purchased
14  over $500.00 in St. John Outlet Products from the St. John Outlet Store located in Camarillo,
15  California, and was damaged thereby.

16  B.    <u>Defendant</u>

17       30.    Defendant St. John Knits, Inc. is a California corporation which is licensed to do,
18  and is doing, business throughout the United States, with its principal place of business located at
19  17522 Armstrong Avenue, Irvine, California. Defendant owns and operates St. John Outlet Stores
20  located in California, and throughout the United States, and designs, markets, advertises, distributes,
21  and/or sells upscale apparel for women.

22       31.    The only stores that are the subject of this Complaint are the St. John Outlet Stores
23  in California. The Complaint expressly excludes any St. John Outlet Products sold at St. John Outlet
24  Stores that advertised a Reference Price that was a prevailing market retail price within the three
25  months preceding. Subsequent to Plaintiff's purchase, an investigation conducted on behalf of
26  Plaintiff revealed that Defendant subtly uses either a white or black colored label which is sewn on
27  the inside of the item of clothing to differentiate between merchandise made predominately, if not
28

10

1   exclusively, for sale throughout its St. John Outlet Stores and those made for sale at the company-
2   operated St. John Boutique Stores in California. Specifically, the white labels are used for the St.
3   John Outlet Products made predominately, if not exclusively, for sale at its Outlet Stores and the
4   black labels are used for other products sold at its Boutique Stores. *See* Exhibits "E" and "F."
5   Defendant intentionally designed the labels this way so that its Outlet Store employees would be
6   able to identify internally within the company those products that were made exclusively for the St.
7   John Outlet Stores. However, Plaintiff, and other reasonable consumers, cannot be expected to have
8   detailed personal knowledge of Defendant's labeling scheme and/or internal pricing policies and
9   procedures, and therefore, understand what the white or black label which is sewn on the inside of
10  an item of clothing might have meant or referred to for products sold in the St. John Outlet Stores.

11          C.      <u>Doe Defendants</u>

12          32.     The true names and capacities of Defendants sued in this Complaint as Does 1
13  through 100, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such
14  Defendants by such fictitious names.  Plaintiff will amend this Complaint to reflect the true names
15  and capacities of the Defendants designated herein as Does 1 through 100, when they have been
16  ascertained, along with the appropriate charging allegations, as may be necessary.

17          33.     Plaintiff is informed and believes, and on that basis alleges, that each of the
18  fictitiously named Defendants was in some manner legally responsible for the actionable and
19  unlawful actions, policies and practices as alleged herein.  Plaintiff will amend this Complaint to set
20  forth the true names and capacities of said Defendants, along with the appropriate charging
21  allegations when the same have been ascertained.  Each reference in this Complaint to "St. John" or
22  "Defendant" is also a reference to all Defendants sued as Does 1 through 100.

23          D.      <u>Agency/Aiding And Abetting</u>

24          34.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein
25  mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other
26  Defendants, and in doing the acts alleged herein, were acting within the course and scope of such
27  agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other
28

11

Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

35.     Plaintiff is further informed and believes, and on that basis alleges, that Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

36.     Whenever reference is made in this Complaint to any act of "St. John" or "Defendant," such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## CONDUCT GIVING RISE TO THE VIOLATIONS OF THE LAW

A.     Plaintiff's Purchases

37.     On October 24, 2019, Plaintiff went shopping at the St. John Outlet Store which is located in Camarillo, California to purchase clothing.

38.     Upon entering the store, Plaintiff observed prominent signage on top of or alongside almost each rack of merchandise, advertising a "discounted % off" reduction for each item offered for sale.  Believing she was able to pay significantly less than the Reference Prices for the identical products normally charged in the retail marketplace, Plaintiff was induced to purchase two different items which were offered at a price significantly lower than their stated "Reference Prices."  Plaintiff purchased the St. John Outlet Products after relying on Defendant's false discounts and false Reference Prices for such products.

CLASS ACTION COMPLAINT

39.     Specifically, relying upon Defendant's misrepresentations and false and deceptive advertising, Plaintiff was induced to purchase the following items: (1) a St. John Milano Knit Coat, Style K61VQ03 bearing a higher "original" price of $1395 and a lower "current" price of $895 reduced to $850 on the price tag; and (2) a St. John Lattice Pique Jacket, Style K61VQB3 bearing a higher "original" price of $1,695 and a lower "current" price of $995 reduced to $945 on the price tag. *See* true and correct copies of price tags attached to each of the two items which Plaintiff purchased on October 24, 2019, attached hereto as Exhibits "G and H."

40.     Plaintiff observed signage above the subject items that advertised a percentage discount (*i.e.*, "__% OFF"), clearly indicating that the items were being sold at a significant discount off the Reference Prices. Specifically, there was signage which represented that the (1) St. John Milano Knit Coat; and (2) St. John Lattice Pique Jacket were now "70% OFF."

41.     Relying on Defendant's misrepresentations and false and deceptive advertising and believing that she was receiving a significant discount from the Reference Prices listed on the price tags by purchasing the items, Plaintiff decided to purchase the items and proceeded to the cash register where she did in fact purchase the items. Plaintiff also believed she was purchasing merchandise that was of the same like, kind and quality of that sold in the regular company-operated St. John Boutique Stores. The purported Reference Prices and corresponding price reductions and savings were false and deceptive, as the prevailing market retail prices for the subject items during the three months immediately prior to Plaintiff's purchase of the items were never at the represented former Reference Prices. Plaintiff would not have purchased the items in the absence of Defendant's misrepresentations. Instead, Defendant *continuously* offered the subject items, like the vast majority of St. John Outlet Products offered for sale at St. John Outlet Stores at discounted prices. As a result, Plaintiff has been personally victimized by and suffered economic injury as a direct result of Defendant's unlawful, unfair and fraudulent conduct. Plaintiff is susceptible to this reoccurring harm because she cannot be certain that Defendant has corrected this deceptive pricing scheme and she desires to shop at St. John Outlet Stores in the future. Plaintiff does not have the resources on her

13

1   own to determine whether Defendant is complying with California and Federal law with respect to

2   its retail pricing practices.

3       42.    Furthermore, upon check-out on October 24, 2019, Defendant provided Plaintiff with

4   sales receipts for her two purchases containing the same misrepresentations regarding false price

5   reductions off the Reference Prices on the subject items. The sales receipts clearly set forth the false

6   Reference Prices (the purported lower current "Our Price" listed on the price tags) for each item

7   purchased, and that Plaintiff was receiving the benefit of a "*Line Discount %*" off the stated

8   Reference Prices for the items purchased and listed the discounts or savings amount for the items,

9   and then the "New Price" amount after the purported discounts. *See* true and correct copies of

10   Plaintiff's sales receipts, dated October 24, 2019, attached hereto as Exhibit "I" and "J."

11       B.    <u>Defendant Engages In Deceptive Advertising</u>

12       43.    Subsequent to Plaintiff's purchase, an investigation conducted on behalf of Plaintiff

13   confirmed that the "Reference Prices" listed on the price tags for Plaintiff's purchases at the St. John

14   Outlet Store were never the prevailing market retail price in the preceding 90 days before Plaintiff's

15   purchase. Additionally, the investigation revealed that Defendant's deceptive advertising practices

16   were systematic and pervasive at St. John Outlet Stores as St. John Outlet Products remain

17   *continuously* discounted from the Reference Prices listed on the price tags or they are not offered

18   for sale at their Reference Prices (the purported "Original" and/or "Current" Price) for any

19   substantial period of time, and in most cases, not at all, and in compliance with California law.

20   Indeed, in most instances, *new* St. John Outlet Products appear at the St. John Outlet Stores that are

21   *immediately* and *perpetually* discounted from the minute the products hit the floors, rendering the

22   Reference Prices completely meaningless, false, and misleading. The difference between the

23   discounted sale prices and the Reference Prices is a false savings percentage reduction used to lure

24   consumers into believing they are receiving a "good deal" and to purchasing products that are

25   significantly discounted. In addition, most St. John Outlet Products sold at St. John Outlet Stores

26   are sold *exclusively* by those stores, which means that such items were never sold – or even intended

27   to be sold – at the Reference Prices advertised on the price tags. For the most part, the St. John

28

14

1  Outlet Products were *never* offered for sale at the company-operated St. John Boutique Stores in
2  California.

3      44.    By failing to price St. John Outlet Products at their actual regular price for a
4  substantial period of time, Defendant artificially inflated the market price or value of the St. John
5  Outlet Products it sells, including the items purchased by Plaintiff.  Moreover, by failing to price its
6  St. John Outlet Products, including the items purchased by Plaintiff at their regular price for a
7  substantial period of time, and in compliance with California law, Defendant interfered with market
8  forces, driving the selling price of its products higher than they would be if Defendant had complied
9  with the law.

10      45.    Defendant's false discounting practice, as described herein, has the effect of setting
11  an artificially high market value for their "on sale" St. John Outlet Products. Customers, like
12  Plaintiff, purchase St. John Outlet Products from Defendant believing they are receiving a
13  substantial discount on their purchases, when in fact they are not. They are instead purchasing an
14  item they would not otherwise buy and paying a higher price than they would otherwise pay were
15  the products subject to fair market competition and pricing.

16      46.    Plaintiff's and Class members' reliance upon Defendant's false price comparison
17  advertising was not only reasonable, but entirely intended by Defendant.   In fact, empirical
18  marketing studies demonstrate that false reference pricing actually creates an impression of higher
19  value and an incentive for retailers to engage in this false and fraudulent behavior:

20          [c]omparative price advertising offers consumers a basis for comparing the
21          relative value of the product offering by suggesting a monetary worth of the
22          product and any potential savings . . . . [A] comparative price advertisement
23          can be construed as deceptive if it makes any representation, . . . . or involves
24          any practice that may materially mislead a reasonable consumer.

25
26  *Comparative Price Advertising: Informative or Deceptive*?, Dhruv Grewal and **Larry D.**
27  Compeau, *Journal of Public Policy & Marketing*, Vol. 11, No. 1, at 52 (Spring 1992).

28

CLASS ACTION COMPLAINT

Furthermore:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product. . . . Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id.* at 55, 56.

47.     A retailer's "reference price," the stated price presented alongside the retailer's "on sale" price, provides consumers a reference point with which to evaluate the prospective purchase. The reference price is often described with terms such as "Regular Price," 'Original Price," and/or "Former Price."

48.     A retailer's reference price impacts the consumer's behavior in the marketplace. As the reference price increases, so does the consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.

49.     When the reference price is bona fide and truthful, it helps consumers make informed purchasing decisions. In contrast, consumers are harmed when merchants advertise their products alongside falsely-inflated former prices, *i.e.*, "false reference prices," as consumers are provided a false sense of value. In this context, the reference price is no longer informative but deceptive because consumers are deprived of a full and fair opportunity to accurately evaluate the specific sales offer in its relevant market. As the Ninth Circuit recognizes, "[m]isinformation about a product's "normal" price is . . . significant to many consumers in the same way as a false product label would be." *See Hinojos v. Kohl's Inc.* 718 F.3d at 1106.

50.     Moreover, the hidden nature of false discounting makes it effective. Consumers, like Plaintiff, unaware of the practices at issue, instead complete their purchases believing that they "got a good deal." Retailers, like Defendant, make falsely-discounted sales without suspicion because consumers do not have access to the comprehensive historical pricing information necessary to reveal the deception.

16

51.     The full extent of Defendant's false and deceptive pricing scheme can only be revealed through a full examination of records exclusively in the possession of Defendant.

52.     Despite the Reference Price scheme used at St. John Outlet Stores, Plaintiff would purchase Defendant's products in the future from St. John Outlet Stores, if price tags accurately reflect "former" prices and discounts. Currently, however, Plaintiff and other consumers have no realistic way to know which – if any – of Defendant's price tags and sale prices are not false or deceptive. If the Court were to issue an injunction ordering Defendant to comply with California's comparative price advertising laws, and prohibiting Defendant's use of the deceptive practices discussed herein, Plaintiff would be able to make informed purchase decisions for Defendant's St. John Outlet Products at St. John Outlet Stores.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action on behalf of herself, and all others similarly situated. The proposed Class that Plaintiff seeks to represent is defined as follows:

> All persons who, while in the State of California, during the four (4) year period preceding the filing of the original Complaint through the date of final judgment in this action (the "Class Period"), purchased one or more St. John Outlet Products at a purported discount off of the stated Reference Prices on the price tags at any St. John Outlet Stores in the State of California, and who have not received a refund or credit for their purchase(s).

54.     Excluded from the Class is Defendant; its corporate parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; any of its officers, directors, employees, or agents; the legal representatives, successors or assigns of any such excluded persons or entities; and the judicial officers to whom this matter is assigned as well as their court staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

17

55.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff estimates that the Class consists of thousands of members.  Moreover, Plaintiff alleges that the precise number of Class members, their identities, and their locations can be ascertained though appropriate discovery and records of Defendant and its agents. Defendant keeps extensive computerized records of its customers through, *inter alia*, customer email programs, customer loyalty programs and/or general marketing programs.  Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and they maintain contact information, including email and home mailing addresses, through which notice of this action could be disseminated to potential Class members in accordance with due process requirements.

56.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.

57.     Among the questions of law and fact common to the Class are, *inter alia*:

a.      Whether, during the Class Period, Defendant used false price representations and falsely advertised price discounts on St. John Outlet Products it sold in its St. John Outlet Stores in California;

b.      Whether Defendant intended its Reference Prices to be synonymous with the item's former, regular, or original price;

c.      Whether, during the Class Period, the Reference Prices advertised by Defendant were the prevailing market prices for the associated St. John Outlet Products sold by Defendant during the three month period preceding the dissemination and/or publication of the advertised Reference Prices;

d.      Whether Defendant's use of false or deceptive price advertising constituted false advertising under California law;

e.      Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices under California law;

CLASS ACTION COMPLAINT

1        f.       Whether Defendant misrepresented and/or failed to disclose material facts about its
2    product pricing and discounts;

3        g.       Whether Defendant has made false or misleading statements of fact concerning the
4    reasons for, existence of, or amounts of price reductions;

5        h.       Whether Defendant's conduct, as alleged herein, was intentional and knowing;

6        i.       Whether Class members are entitled to damages and/or restitution; and, if so, what
7    is the amount of revenues and/or profits Defendant received and/or was lost by Class members as a
8    result of the conduct alleged herein;

9        j.       Whether an injunction is necessary to prevent Defendant from continuing to use
10    false, misleading or illegal price comparisons; and

11        k.       Whether Plaintiff and Class members are entitled to an award of reasonable
12    attorneys' fees, pre-judgment interest and costs of suit.

13        58.     Plaintiff's claims are typical of the claims of the members of the Class and, like all
14    members of the Class, purchased St. John Outlet Products from a St. John Outlet Store that conveyed
15    false Reference Prices and fictitious discounts. Plaintiff and the Class she seeks to represent have
16    all been deceived (or were likely to be deceived) by Defendant's false former price advertising
17    scheme, as alleged herein.  Plaintiff is advancing the same claims and legal theories on behalf of
18    herself and all members of the Class.  Accordingly, Plaintiff has no interests antagonistic to the
19    interests of any other member of the Class.

20        59.     Plaintiff is an adequate representative of the Class because she is a member of the
21    Class and her interests do not conflict with the interests of the Class members she seeks to represent.
22    Plaintiff will fairly and adequately represent and protect the interest of the Class because she is not
23    antagonistic to the Class.  Plaintiff has retained counsel who are competent and experienced in the
24    prosecution of consumer fraud and class action litigation.

25        60.     The nature of this action and the nature of laws available to Plaintiff and the Class
26    make the use of the class action format a particularly efficient and appropriate procedure to afford
27    relief to Plaintiff and the Class for the wrongs alleged because:

28

CLASS ACTION COMPLAINT

a.      The individual amounts of damages involved, while not insubstantial, are such that individual actions or other individual remedies are impracticable and litigating individual actions would be too costly;

b.      If each Class member was required to file an individual lawsuit, the Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class member with vastly superior financial and legal resources;

c.      The costs of individual suits could unreasonably consume the amounts that would be recovered;

d.      Proof of a common factual pattern that Plaintiff experienced is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and

e.      Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

61.      Plaintiff and Class members have all similarly suffered irreparable harm and damages as a result of Defendant's unlawful and wrongful conduct.  This action will provide substantial benefits to Plaintiff, the Class and the public because, absent this action, Plaintiff and Class members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy, and allowing Defendant to retain proceeds of its ill-gotten gains.

62.      All Class members, including Plaintiff, were exposed to one or more of Defendant's misrepresentations or omissions of material fact claiming that advertised Reference Prices were in existence.  Due to the scope and extent of Defendant's consistent false price advertising scheme, disseminated in a massive, years-long campaign to California consumers via in-store display advertising, print advertising, price tags, and the like, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class.  In addition, it can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the representations contained in Defendant's false advertising scheme when purchasing St. John Outlet Products at St. John Outlet Stores in California.

63.     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, the systematic policies and procedures of Defendant make final injunctive relief or declaratory relief with respect to the Class as a whole appropriate.

## FIRST CAUSE OF ACTION

Violation Of The "Unfair" Prong Of The UCL
(By Plaintiff and the Class Against Defendant)

64.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

65.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

66.     The UCL imposes strict liability.   Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – only that such practices occurred.

67.     A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

68.     Defendant has violated and continues to violate the "unfair" prong of the UCL by representing false Reference Prices and corresponding price discounts for its St. John Outlet Products sold at St. John Outlet Stores in California.  As a result, the inflated Reference Prices were nothing more than false, misleading and deceptive prices included to create the illusion of discounts.

69.     Defendant's acts and practices are unfair because they caused Plaintiff, and reasonable consumers like her, to falsely believe that St. John Outlet Stores are offering value, discounts or bargains from the prevailing market worth of the St. John Outlet Products sold that did not, in fact, exist.  Defendant intended and intend for Plaintiff and Class members to equate the Reference Prices with a higher original or current/regular price.  As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the retail

21

1  marketplace at substantially higher prices (and are, therefore, worth more) than what they paid. This

2  perception has induced reasonable purchasers, including Plaintiff, to buy St. John Outlet Products,

3  which they otherwise would not have purchased.

4      70.    The gravity of the harm to members of the Class resulting from these unfair acts and

5  practices outweighed any conceivable reasons, justifications and/or motives of Defendant for

6  engaging in such deceptive acts and practices.  By committing the acts and practices alleged above,

7  Defendant engaged in unfair business practices within the meaning of California Business &

8  Professions Code §§ 17200, *et seq.*

9      71.    As a direct and proximate result of Defendant's acts and practices, Plaintiff and Class

10  members have suffered injury in fact and have lost money or property as a result of purchasing

11  Defendant's St. John Outlet Products.

12      72.    Through their unfair acts and practices, Defendant has improperly obtained money

13  from Plaintiff and the Class.  As such, Plaintiff requests that this Court cause Defendant to restore

14  this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate

15  the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff and

16  the Class may be irreparably harmed and/or denied an effective and complete remedy if such an

17  order is not granted.

**SECOND CAUSE OF ACTION**

Violation Of The "Fraudulent" Prong Of The UCL
(By Plaintiff and the Class Against Defendant)

18

19

20      73.    Plaintiff re-alleges and incorporates by reference the allegations contained in the

21  preceding paragraphs as though fully set forth herein.

22      74.    The UCL defines unfair business competition to include any "unlawful, unfair or

23  fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal.

24  Bus. & Prof. Code § 17200.

25      75.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive

26  members of the consuming public.

27

28

22

CLASS ACTION COMPLAINT

76.     The price tags on the St. John Outlet Products and advertising materials containing false Reference Prices were "fraudulent" within the meaning of the UCL because they deceived Plaintiff, and were likely to deceive members of the Class, into believing that Defendant was offering value, discounts or bargains at St. John Outlet Stores from the prevailing market value or worth of the St. John Outlet Products sold that did not, in fact, exist.  As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving St. John Outlet Products that regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception induced reasonable purchasers, including Plaintiff, to buy such products from Defendant, which they otherwise would not have purchased.

77.     Defendant's acts and practices as described herein have deceived Plaintiff and were highly likely to deceive members of the consuming public. Specifically, in deciding to purchase St. John Outlet Products from St. John Outlet Stores, Plaintiff relied on Defendant's misleading and deceptive Reference Prices and discounted prices. Each of these factors played a substantial role in Plaintiff's decision to purchase St. John Outlet Products, and Plaintiff would not have purchased the subject items in the absence of Defendant's misrepresentations. Accordingly, Plaintiff suffered monetary loss as a direct result of Defendant's practices described herein.

78.     As a direct and proximate result of Defendant's acts and practices, Plaintiff and Class members have suffered injury in fact and have lost money or property as a result of purchasing Defendant's St. John Outlet Products.

79.     As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

80.     Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and

CLASS ACTION COMPLAINT

the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## THIRD CAUSE OF ACTION

Violations Of The "Unlawful" Prong Of The UCL
(By Plaintiff and the Class Against Defendant)

81.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

82.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

83.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

84.     The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. § 52(a)). The FTC has established Guidelines that describe false former pricing schemes, similar to Defendant's in all material respects, as deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

1   (b) A former price is not necessarily fictitious merely because no sales at the

2   advertised price were made. **The advertiser should be especially careful, however, in**

3   such a case, that the price is one at which the product was openly and actively offered

4   for sale, for a reasonably substantial period of time, in the recent, regular course of

5   her business, honestly and in good faith – and, of course, not for the purpose of

6   establishing a fictitious higher price on which a deceptive comparison might be

7   based.

8   16 C.F.R. § 233.1.

9        85.     California statutory and regulatory law also expressly prohibits false former pricing

10  schemes. Cal. Bus. & Prof. Code § 17501, entitled "*Value determinations; Former price*

11  *advertisements*," states:

12  For the purpose of this article the worth or value of anything advertised is the

13  prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at

14  retail, at the time of publication of such advertisement in the locality wherein the

15  advertisement is published.

16  *No price shall be advertised as a former price of any advertised thing, unless the*

17  *alleged former price was the prevailing market price as above defined within three*

18  *months next immediately preceding the publication of the advertisement* or unless

19  the date when the alleged former price did prevail is clearly, exactly and

20  conspicuously stated in the advertisement. [Emphasis added.]

21

22       86.     As detailed in Plaintiff's Fifth Cause of Action below, Cal. Civ. Code § 1770,

23  subsection (a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell

24  them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading

25  statements of fact concerning reasons for, existence of, or amounts of price reductions."

26       87.     Defendant also violated and continues to violate Business & Professions Code §

27  17501, and Civil Code § 1770, sections (a)(9) and (a)(13) by advertising false discounts from

28

CLASS ACTION COMPLAINT

1  purported former prices that were, in fact, not the prevailing market prices within three months next

2  preceding the publication and dissemination of advertisements containing the false former prices.

3       88.    Defendant's use of and reference to a materially false Reference Prices, and

4  purported percentage discounts in connection with its marketing and advertisements concerning the

5  St. John Outlet Products sold at St. John Outlet Stores violated and continues to violate the FTCA,

6  15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at Title 16, Code

7  of Federal Regulations, Section 233.

8       89.    As a direct and proximate result of Defendant's acts and practices, Plaintiff and Class

9  members have suffered injury in fact and have lost money or property as a result of purchasing

10 Defendant's St. John Outlet Products.

11      90.    As a result of the conduct described above, Defendant has been unjustly enriched at

12 the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been

13 unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent

14 its false, misleading and deceptive conduct.

15      91.    Through its unfair acts and practices, Defendant has improperly obtained money

16 from Plaintiff and the Class. As such, Plaintiff requests that this Court cause Defendant to restore

17 this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate

18 the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and

19 the Class may be irreparably harmed and/or denied an effective and complete remedy if such an

20 order is not granted.

### FOURTH CAUSE OF ACTION

21

22     Violation Of California False Advertising Law
California Business & Professions Code Sections 17500, *et. seq.*
(By Plaintiff and the Class Against Defendant)

23

24      92.    Plaintiff re-alleges and incorporates by reference the allegations contained in the

25 preceding paragraphs as though fully set forth herein.

26      93.    The California False Advertising Law prohibits unfair, deceptive, untrue, or

27 misleading advertising, including, but not limited to, false statements as to worth, value and former

28

CLASS ACTION COMPLAINT

1  price.

2       94.    Cal. Bus. & Prof. Code § 17500 provides that:

3      [i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal

4      property . . . to induce the public to enter into any obligation relating thereto, to make

5      or disseminate or cause to be made or disseminated . . . from this state before the

6      public in any state, in any newspaper or other publication, or any advertising device,

7      or by public outcry or proclamation, or in any other manner or means whatever,

8      including over the Internet, any statement . . . which is *untrue* or *misleading*, and

9      which is known, or which by the exercise of reasonable care should be known, to be

10     untrue or misleading . . . [Emphasis added.].

11      95.    The "intent" required by Cal. Bus. & Prof. Code § 17500 is the intent to dispose of

12 property, and not the intent to mislead the public in the disposition of such property.

13      96.    Similarly, Cal. Bus. & Prof. Code § 17501 provides, "no price shall be advertised as

14 a former price of any advertised thing, unless the alleged former price was the prevailing market

15 price . . . within three months next immediately preceding the publication of the advertisement or

16 unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated

17 in the advertisement."

18      97.    Defendant's routine practice of including false Reference Prices on the price tags for

19 St. John Outlet Products sold at St. John Outlet Stores, which were never the true prevailing prices

20 of those products was an unfair, deceptive and misleading advertising practice.  This deceptive

21 marketing practice gave consumers the false impression that the St. John Outlet Products sold at St.

22 John Outlet Stores were regularly sold in the retail marketplace at substantially higher prices than

23 they actually were. Therefore, leading to the false impression that the merchandise was worth more

24 than it actually was.  In fact, St. John Outlet Products that were made predominately, if not

25 exclusively, for sale in the St. John Outlet Stores were never sold at the Reference Prices under any

26 circumstances.

27

28

98.     Defendant misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code, as alleged above.

99.     As a direct and proximate result of Defendant's acts and practices, Plaintiff and Class members have suffered injury in fact and have lost money or property as a result of purchasing Defendant's products.

100.    Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate the False Advertising Law as discussed herein in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FIFTH CAUSE OF ACTION

For Violation Of The Consumer Legal Remedies Act
California Civil Code Sections 1750, *et. seq.*
(By Plaintiff and the Class Against Defendant)

101.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

102.    This cause of action is brought pursuant to the CLRA.

103.    Plaintiff and each member of the proposed Class are "consumers" within the meaning of California Civil Code § 1761(d).

104.    Defendant's sale of St. John Outlet Products at St. John Outlet Stores to Plaintiff and the Class were "transactions" within the meaning of California Civil Code § 1761(e). The St. John Outlet Products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

105.    As described herein, Defendant violated, and continues to violate, the CLRA by falsely representing the nature, existence and amount of price discounts by fabricating inflated Reference Prices and including the Reference Prices on the price tags for St. John Outlet Products. Such a pricing scheme is in violation of Cal. Civ. Code § 1770, subsection (a)(9) ("[a]dvertising

28

1  goods or services with intent not to sell them as advertised") and subsection (a)(13) ("[m]aking false
2  or misleading statements of fact concerning reasons for, existence of, or amounts of price
3  reductions").

4  106.   Plaintiff relied on Defendant's false representations in deciding to purchase St. John
5  Outlet Products from Defendant.  Plaintiff would not have purchased such merchandise absent
6  Defendant's unlawful conduct.  As a result of these acts and practices, Plaintiff suffered damage in
7  that she spent money at the St. John Outlet Store that she would not have otherwise spent absent
8  Defendant's unlawful and misleading acts and practices.

9  107.   Pursuant to Section 1782(a) of the CLRA, on March 12, 2021, Plaintiff's Counsel,
10 on behalf of Plaintiff Ostrovskaya, served Defendant by United States certified mail, return receipt
11 requested, with notice of Defendant's particular violations of the CLRA and requested that
12 Defendant identify victims, notify victims and remedy its illegal conduct within 30 days.

13 108.   Plaintiff has requested that Defendant timely respond to the CLRA demand notice
14 and presently seeks only injunctive relief pursuant to the CLRA.  If Defendant fails to fully,
15 completely and timely comply with Plaintiff's demand letter, Plaintiff will amend this Complaint to
16 seek actual, punitive, and statutory damages, as appropriate, under the CLRA.  Under California
17 Civil Code §1782(d), after the commencement of an action for injunctive relief, and after
18 compliance with the provisions of Section 1782(a), Plaintiff may amend her Complaint without
19 leave of court to include a request for damages.

20

21 **PRAYER FOR RELIEF**

22 WHEREFORE, Plaintiff, on behalf of herself and members of the Class, prays for relief and
23 judgment against Defendant as follows:

24 1.   For an order certifying this matter as a class action and designating Plaintiff as the
25 Class Representative and Plaintiff's Counsel as Class Counsel;

26 2.   For an order awarding restitution and disgorgement of all profits and unjust
27 enrichment that Defendant obtained from Plaintiff and the Class members as a result of its unlawful,

28

CLASS ACTION COMPLAINT

1  unfair, and fraudulent business practices described herein;

2        3.     For appropriate injunctive relief as permitted by law or equity;

3        4.     For an order directing Defendant to engage in a corrective advertising campaign;

4        5.     For an award of attorneys' fees as authorized by statute including, but not limited to,

5  the provisions of California Civil Code § 1780(e), California Code of Civil Procedure § 1021.5, as

6  authorized under the "common fund" doctrine, and as authorized by the "substantial benefit"

7  doctrine;

8        6.     For costs of the suit incurred herein;

9        7.     For prejudgment interest at the legal rate; and

10        8.     For such other and further relief as the Court may deem proper.

11  <u>**DEMAND FOR JURY TRIAL**</u>

12  Plaintiff hereby demands a trial by jury for Plaintiff and the Class as to all issues so triable.

13

14

15  Dated: March 12, 2021           **LAW OFFICES OF ZEV B. ZYSMAN**

16                          **A PROFESSIONAL CORPORATION**

17

18                        ZEV B. ZYSMAN

19

20                        15760 Ventura Boulevard, 16th Floor

21                        Encino, CA 91436
                      Telephone: (818) 783-8836

22                        Facsimile:  (818) 783-9985
                      zev@zysmanlawca.com

23                        *Attorneys for Plaintiff Irina Ostrovskaya and*
                      *The Proposed Class*

24

25

26

27

28

30